**Nancy DAVIS**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, et al.**

**Civ. A. No. 87–5117.**

United States District Court, E.D. Pennsylvania.

March 14, 1990.

Patricia V. Pierce, Philadelphia, Pa., for plaintiff.

Nicholas J. Staffieri, Philadelphia, Pa., for defendant.

## MEMORANDUM

ROBERT F. KELLY, District Judge.

This memorandum is written in disposition of the two post-trial motions that remain undecided in this procedurally, but not factually, complex case.

In this civil rights case brought under § 1983 and § 1985(3) of Title 42 of the U.S.Code and Title VII of the Civil Rights Act of 1964 plaintiff alleged that she had been fired from her job as a Septa police officer because of her sex, her race (she is a white woman who was married to a black man) and in retaliation for previous civil rights complaints that she had made. Septa contended that she was fired because it was determined that while she was off-duty she pulled her service revolver in a crowded trolley in an inappropriate response to a dispute with a group of men who were smoking on the trolley. At trial the plaintiff proved that after her firing she was out of work for a considerable period and provided evidence that it would be very difficult for her ever to make as much money as she made as a police officer. A forensic economist testified for the plaintiff and she claimed damages, reduced to present value, that were in excess of $600,000. The forensic economist testified that she lost $101,000 in back pay and suffered $500,000 in damages for lost future earnings. She also claimed damages for pain and suffering. After deliberating for more than a day and sending out a note that said they were deadlocked, the jury returned a verdict in favor of the plaintiff in the amount of $10,000.

After trial I issued findings of fact and conclusions of law on the Title VII claim finding in favor of the defendants, because in my view the clear weight of the evidence is against plaintiff's contention that she was fired for reasons of illegal discrimination. Plaintiff has filed a motion to amend this judgment to conform with the jury's verdict, which I will grant.

Plaintiff has also filed a motion for the award of costs and attorney's fees, which I will grant in a reduced amount.

Defendant filed a motion for judgment notwithstanding the verdict which I denied.

The reason that I denied this motion was that although I believe that the evidence in support of the verdict is razor thin, I thought that there was sufficient evidence to support the verdict under controlling precedent. To summarize the plaintiff's case in the most favorable light, it consisted of trying to prove that the

reason Septa gave for her firing was untrue, that if the people who made the decision to fire her were inclined to be prejudiced for gender or racial reasons or were inclined to retaliate for past complaints, they would have had a motive, that she had been badly treated by Septa regarding a complaint against the Philadelphia police, and that therefore there must have been some illegal reason for her firing. In *Chipollini v. Spencer Gifts*, 814 F.2d 893, 897–98 (3d Cir.) *cert. denied* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987) the Court of Appeals held that a case is sufficient to go to the jury if the plaintiff proved his or her case "indirectly by showing that the employer's proffered explanation is unworthy of credence." Here, the plaintiff presented evidence that Septa did not fire her for the stated reason and the jury could have reasonably believed this evidence. Under *Chipollini*, if the jury finds that the expressed reason for the firing is not true, it is permitted to come to the conclusion that the real reason must be illegal discrimination. *See also Roebuck v. Drexel University*, 852 F.2d 715, 727 (3d Cir.1988).

■ For the reasons stated in my memorandum of May 5, 1989, I think such a conclusion is against the great weight of the evidence, and if I thought that it was procedurally permissible I would have ordered a new trial. Further, it is clear to me that this was a compromise verdict since no reasonable person could come to the conclusion that the plaintiff was fired because of illegal discrimination, but was only damaged in the amount of $10,000. The jury returned a verdict very shortly after sending a note that said that they were deadlocked without receiving any instructions that would explain the resolution of the deadlock. A district court does have the power to grant a new trial on the ground that the verdict is against the weight of the evidence, *Byrd v. Blue Ridge Rural Electric Co-op*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958), that the damages are insufficient, *Tann v. Service Distributors, Inc.*, 56 F.R.D. 593, 598 (E.D.Pa.1972) *aff'd* 481 F.2d 1399 (3d Cir. 1973) or that the verdict was arrived at by

compromise, *National Fire Insurance Co. of Hartford v. Great Lakes Warehouse Corp.*, 261 F.2d 35, 38 (7th Cir.1958); *Davison v. Monessen Southwestern Railway Company*, 144 F.Supp. 599, 600 (W.D.Pa. 1956). *See generally* 11 C. Wright & A. Miller, Federal Practice and Procedure (1973 & Supp.1990) at §§ 2805 to 2810.

There is some scholarly support for the idea that a court should be able to grant a new trial in the absence of a motion for a new trial, if there has been a motion for judgment n.o.v. J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.11 (2d ed. 1989); Recent Cases, 71 Harv.L.Rev. 552 (1958); Note, 33 Notre Dame L.Rev. 126 (1957); Note, 5 UCLA L.Rev. 154 (1957). *See also Jackson v. Wilson Trucking Corp.*, 243 F.2d 212, 217 (D.C.Cir.1957) (Burger, J. dissenting). However, the decisions of the Courts of Appeal have gone the other way. *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411 (8th Cir. 1985); *Kain v. Winslow Manufacturing, Inc.*, 736 F.2d 606 (10th Cir.1984) *cert. denied* 470 U.S. 1005, 105 S.Ct. 1360, 84 L.Ed.2d 381 (1985); *Peterman v. Chicago R.I. & P.R.R.*, 493 F.2d 88 (8th Cir.) *cert. denied* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974); *Jackson v. Wilson Trucking Corp.*, 243 F.2d 212 (D.C.Cir. 1957). Therefore, I was unable to order a new trial.

In *Roebuck v. Drexel University*, 852 F.2d at 737–39 the Court of Appeals decided that a district court is precluded from making its own findings of fact when a Title VII case is tried concurrently with a civil rights action that is tried to a jury. For this reason I will grant the plaintiff's motion to amend this judgment to conform to the jury's verdict. However, the court in *Roebuck* went on to explain that such a change in the judgment has very little legal effect. The only element of damages that is available to a plaintiff under Title VII that is not available under the civil rights action is recovery for attorney fees for the administrative proceedings that are required under Title VII. *Id.* at 739 n. 44.

Next will be considered the petition for attorney's fees and costs. The law to be

applied in considering applications for attorney's fees is summarized in *Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1455 (3d Cir.1988):

> The Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 435 [103 S.Ct. 1933, 1940, 76 L.Ed.2d 40] (1983), held that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *See City of Riverside v. Rivera*, 477 U.S. 561 [106 S.Ct. 2686, 91 L.Ed.2d 466] (1986) (quoting *Hensley*); *Cooper v. Dyke*, 814 F.2d 941, 950 (4th Cir.1987) ("[f]ull compensation for hours expended does not require plaintiff to prevail on every claim ... where all claims are closely related because based on common facts or related legal theories, a court is not obligated to determine which hours were spent on which claims"). On the other hand, "where the plaintiff achieved only limited success, the district court should only award that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440 [103 S.Ct. at 1943]. The Court noted that there is no "precise rule or formula for making these determinations," but that the district court must exercise its discretion in reducing the fee downward. *Id.* at 436–37 [103 S.Ct. at 1941].

There were not multiple claims in the underlying litigation in this case. The only thing demanded of the court or jury by the plaintiff was money damages for her firing. In response to this demand she received $10,000. There is no way that this can be characterized as having obtained "excellent results," from the client's point of view this result has to be called "limited success."

In her petition the plaintiff's attorney asked for approximately $75,000 in attorney's fees, $9,000 in paralegal costs, $18,500 for a trial consultant and $16,000 in costs. There is something wrong with spending $118,500 to receive a recovery of $10,000. This amount simply is not "reasonable in relation to the results obtained," especially where the only result sought is money damages.

I find particularly troubling the lack of any motion from the plaintiff's attorney for a new trial on the basis of inadequate damages, in this case where, if the plaintiff was injured at all, she was very substantially injured. I can only think of two reasons for this. First, it may be that the plaintiff's attorney thought that this was a weak case and that the plaintiff was lucky to get $10,000 in damages. But, if that was the case, spending $118,500 getting the case to the jury is unreasonable billing judgment. If it is a weak case in which the plaintiff is only barely the prevailing party, there is no damage done to the public interest or to the congressional intent, by greatly limiting the attorney fee until it is reasonable in relation to the amount of the recovery. The other possibility is that moving for a new trial would have endangered the attorney's fee recovery. In this case there was a serious conflict of interest between the attorney for the plaintiff and the plaintiff herself. It is inherently a result of the verdict in this case that any attempt by the attorney to get her client an adequate recovery for the damages she claimed would have endangered the very substantial amount that she expected to receive for the hours that she put into this file, because in the new trial there might be a verdict for the defendant.

Allowing large and disproportionate attorney fee recoveries in civil rights cases for relatively small verdicts has two results that I can see. First, in a small case, it gives attorneys the incentive to put many more hours into a file than it deserves, because even a small recovery results in the full amount of attorney's fees. In *Hensley* the Supreme Court dealt with this problem by requiring a plaintiff's attorney to exercise "billing judgment" stating that "[h]ours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." 461 U.S. at 434, 103 S.Ct. at 1940 (emphasis in original). Second, in cases with a large amount of damages, but a

small recovery it sets up a conflict of interest between a civil rights attorney and his or her client. Only by protecting the small verdict can the attorney protect his or her large fee.

I think that it is relevant to note here two observations that I made at the trial. The first is that in counsel's closing argument she devoted almost all her time to arguing liability and only briefly mentioned her client's substantial damages. Second, when the verdict was read the plaintiff looked severely disappointed. Counsel and her trial consultant, who sat at counsel table for the trial, appeared elated and hugged each other.

■ *Hensley* states that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. In this case there is a request for attorney fees for two attorneys. For Patricia Pierce, Esq. there is a request for payment at the rate of $150 per hour for 477.4 hours for a total of $71,610. For Patricia A. McInerney, Esq. the request is for 39.2 hours at a rate of $125 per hour. Septa objects to 5.5 hours spent with the plaintiff when she testified in an unrelated case and 3 hours spent attending a Septa board meeting to "Identify possible witnesses or trial evidence." Because I agree that these hours were not reasonably spent in the prosecution of this case I will reduce the McInerney request by 8.5 hours. This leaves 30.7 hours at a rate of $125 per hour for a total of $3,837.50.

*Hensley* further states where the attorney has obtained for his client "excellent results" he should recover his full fee, but where he has received "only limited success" the court should reduce the fee so that it is "reasonable in relation to the results obtained." The only way to grant the full lodestar amount would be to ignore this language in *Hensley*. Significantly reducing the lodestar also reduces the conflict of interest between attorney and client.

■ I am cognizant of the Court of Appeals opinion in *Cunningham v. City of McKeesport,* 807 F.2d 49 (3d Cir.1986) *cert. denied* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987). However, I believe that case is distinguished from this one by my specific finding that the plaintiff did not get a good result. I also note that in *Black Grievance Committee v. Philadelphia Electric,* 802 F.2d 648, 654 (3d Cir. 1986) *vacated on other grounds* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987) the Court of Appeals approved a 25% reduction in the lodestar because of results obtained. I believe that any way one reads the various Supreme Court opinions in *Hensley* and *City of Riverside,* how successful the litigation is for the plaintiff is an important factor for deciding what the attorney fee should be.

Because I think that this case did not have a good result from the client's point of view I will reduce the lodestar amount by two-thirds to make it reasonable in relation to the $10,000 recovery. I will therefore allow a recovery of $25,149.17 in attorney's fees.

■ Because I do not believe that plaintiff has shown that the very extensive work performed on this case by Elissa Krauss, her non-lawyer trial consultant, is a reasonable expense I will disallow that request for $18,462.50. I do not believe that in the present day practice of law any reasonable attorney would charge his or her own client anything approaching these kinds of "consulting" fees in this kind of case. I am not willing to shift that burden to the defendants. I do not believe that when Congress decided that attorney's fees should be recoverable, it authorized courts to compensate non-lawyers for doing attorneys' work. Ms. Krauss states in her affidavit that the work she is billing for is not paralegal work and her time sheets indicate that she is correct. I do not believe that what she was doing was necessary for the prosecution of this case, but if she was doing anything in it, she was practicing law. I am allowing more than five hundred hours to be billed to this case for attorney fees. All the legal work required

to bring this case to trial could have been done in those five hundred hours and it would be superfluous to allow any recovery for the 130 hours that Ms. Krauss put into this case as a trial consultant.

Because the U.S. Supreme Court has held that paralegals should be compensated at market rates for the work they perform, *Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 2471–72, 105 L.Ed.2d 229 (1989), I will allow the $8,977.50 requested for paralegal work.

I will allow the request for $16,472.50 in costs. This reduces the plaintiff's request from $118,500 for bringing this case to trial to $50,598.17.