**DAVIS, Nancy, Appellant,**

**v.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY and City of Philadelphia and P/O John Doe, individually and in his official capacity and P/O Ronald Roe, individually and in his official capacity and Smith, Thomas P., Chief Transit Police, individually and in capacity as Chief Transit Officer and Robinson, Robert C., Deputy Chief of Transit Police, individually and in his official capacity, Appellees.**

No. 90–1283.

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1990.

Decided Jan. 22, 1991.

Theodore M. Lieverman (argued), Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J., and Patricia V. Pierce, Law Office of Patricia V. Pierce, Philadelphia, Pa., for appellant.

Nicholas J. Staffieri (argued), SEPTA Legal Dept., Philadelphia, Pa., for appellees.

Before HIGGINBOTHAM, Chief Judge, and SCIRICA and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Chief Judge.

This case presents the appeal of the district court's Order dated March 9, 1990 granting plaintiff's motion for award of attorney's fees and costs, but reducing it by two-thirds because of the plaintiff's "limited success." 735 F.Supp. 158. Because we believe that the district court reached the correct result, we will affirm the lower court's order.

## I.

Plaintiff-appellant, Nancy Davis ("plaintiff"), was employed as a Transit Officer by Southeastern Pennsylvania Transportation Authority ("SEPTA") until August 27, 1985. Plaintiff brought this action in August of 1987 against SEPTA, the City of Philadelphia and several John Doe police officers [1], Thomas P. Smith, Chief of SEPTA's Transit Police, and Robert C. Robinson, Deputy Chief of SEPTA's Transit Police.

Plaintiff, a white woman, and her husband, a black man, initially filed complaints with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission (E.E.O.C.) alleging that defendants had wrongfully discriminated against her at her place of employment in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). Following the filing of her administrative complaints, plaintiff commenced this civil action in the court.[2] Although the plaintiff alleged in a second amended complaint that a conspiracy, formed by all named defendants, was designed to interfere with her federal constitutional right to a workplace free from discrimination, by Order entered on July 25, 1988, the district court dismissed plaintiff's second amended complaint with prejudice. The court proceeded on the original complaint and issued the following findings of fact in its memorandum of May 5, 1989:

In March of 1985, the plaintiff made an arrest and escorted the prisoner to the Philadelphia Police Department Central Detective Division to be charged. While at the Police Department, plaintiff alleged that Detective Falcone of the Philadelphia Police Department made offensive racial remarks regarding her marriage to a black man. Plaintiff complained to her supervisor, Chief Robert C. Robinson, about Detective Falcone's behavior, and she was directed to file a written complaint with SEPTA and the Internal Affairs Division of the Philadelphia Police Department, which she did. Subsequently, plaintiff was asked by her supervisors to submit to a polygraph test to determine the truth of her allegations against Detective Falcone. Plaintiff refused to submit to such a test, noting that Detective Falcone had not been required to submit to such a test. On May 31, 1985, plaintiff received a written reprimand from defendant Smith (Chief of SEPTA's Transit Police) for her refusal to take the polygraph, and to cooperate in the investigation.

In June of the same year, plaintiff was temporarily suspended on the basis of allegations that she had abused her sick leave privileges. The district court found that the plaintiff had been subject to disciplinary action on a number of occasions, dating back to 1982, because she had allegedly abused her sick leave privileges.

---

**1.** By order entered July 25, 1988, the district court granted the motion to dismiss filed by the City of Philadelphia and its John Doe defendants.

**2.** By Order entered on July 25, 1988, the district court denied defendant's motion to dismiss the pendant state claims (since they were withdrawn by the plaintiff) and the federal claims.

In July of 1985, plaintiff arrested three trolley passengers for disorderly conduct[3], and the passengers were subsequently convicted and fined. In the course of making the arrest, plaintiff displayed her weapon in view of other passengers on the trolley. Subsequently, the convicted passengers filed complaints regarding plaintiff's conduct during the arrest. The district court found that plaintiff's behavior constituted "an egregiously improper use of a firearm by a police officer, and [was] totally out of proportion to the problem that the plaintiff faced." (App. at 131).

After conferring with Chief of Police Thomas P. Smith, and Deputy Chief Howard Patton, Chief Robinson discharged plaintiff from the SEPTA Police Department on August 27, 1985 on the grounds that "a police officer who behaved in this way was a serious danger to innocent persons and could not be permitted to remain with the department." (App. at 132).

Plaintiff alleged that the reasons for the firing offered by Defendant Robinson were a pretext for discrimination, citing the Department's failure to discipline other officers who she alleged used excessive force in the course of making arrests. Plaintiff cited several acts in support of her allegations, but this evidence was excluded at trial. (App. at 14–15).

In March 1989, the plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 went to trial before a jury, and on March 21, 1989 the jury returned a verdict in favor of the plaintiff and against defendants SEPTA, Thomas P. Smith, and Robert C. Robinson in the amount of $10,000.

On March 22, 1989, the SEPTA defendants filed a motion for judgment notwithstanding the verdict ("JNOV"). The district court issued a memorandum and order on May 15, 1989, finding for the SEPTA defendants and against the plaintiff on the plaintiff's claim for relief under Title VII. Subsequently, the court granted plaintiff's

motion to conform its judgment noting that under *Roebuck v. Drexel University*, 852 F.2d 715, 737–39 (3d Cir.1988), a district court is required to follow the jury verdict when a Title VII case is tried by a court concurrently with a civil rights action that is tried before a jury. By Order entered November 15, 1989, the district court denied defendant's motion for JNOV, but expressed its personal view that the jury verdict was against the great weight of the evidence.

By Order entered March 9, 1990, the court granted plaintiff's motion for attorneys fees and costs, "reduced by two-thirds." (App. at 286). The district court awarded costs for paralegal expenses and all other expenses of litigation, but denied all payment for work performed by plaintiff's trial consultant, Elissa Krauss, on the grounds that the trial consultant's work was not necessary for the prosecution of the case.

From the Order entered March 12, 1990, and the Memorandum Opinion entered March 14, 1990, plaintiff filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In the memorandum in support of the district court's Order granting appellant's motion to alter or amend the judgment on plaintiff's Title VII claim and on plaintiff's motion for the award of attorney's fees, the district court noted that "[t]here is something wrong with spending $118,500 to receive a recovery of $10,000. This amount simply is not 'reasonable in relation to the results obtained,' especially where the only result sought is money damages." (App. at 283). The court also listed two potentially undesirable results of "[a]llowing large and *disproportionate* attorney fee recoveries in civil rights cases

---

**3.** In the district court's memorandum of May 5, 1989, it described the specific circumstances of the alleged disorderly conduct. The court found that:

On July 4, 1985 the plaintiff was riding home from work on a crowded trolley when she got into an argument with a group of men because one of them was smoking.
App. at 131.

for relatively small verdicts ..."[4] Taken in isolation, the district court's statements might be construed to adopt a "rule of proportionality," in the award of attorneys fees.[5] However, this court explicitly rejected a "rule of proportionality" in *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir.1989).[6] Today, we re-affirm our holdings in *Northeast Women's Center* and *City of McKeesport v. Cunningham*, 807 F.2d 49 (3d Cir.1986) ("Cunningham II"), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987) which reject a per se proportionality rule, and hold that it is not permissible for a trial judge to make a reduction in the attorney's fee award solely on the basis of proportionality.

In *Northeast Women's Center*, this court affirmed the district court's award of attorney's fees in the amount of $64,946.11, where the plaintiffs were awarded total damages of $2661 (trebled damages of $887 in accordance with 18 U.S.C. § 1964(c)). In *Northeast Women's Center*, this court noted that the court below held that "it could not reduce the fee award simply because of the relatively small RICO damages assessed by the jury." *Northeast Women's Center*, 889 F.2d at 471. This court affirmed the lower court's holding, and cited its earlier decision in *Cunningham II* and the Supreme Court's holding in *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) as further support for its position.

As this court noted in *Northeast Women's Center*, the *City of Riverside* case addressed the issue of whether an award of attorney's fees under 42 U.S.C. § 1988 is per se "unreasonable" if it exceeds the amount of damages recovered by the plaintiff in the underlying civil rights action. *See Northeast Women's Center*, 889 F.2d at 471–75. The Supreme Court, in an opinion by Justice Brennan, rejected the rule of proportionality, and made it clear that the amount of damages recovered is only one of the factors to be considered by the court in calculating the amount of attorney's fees. The Supreme Court also noted that the damage award is only a partial measure of success in civil rights cases, and found that the "significance of the overall relief obtained by the respondents in this case" justified an award based on the total hours expended on the litigation.[7] In sum, the *City of Riverside* case supports the plaintiff's argument that attorney's fees need not be proportionate to the size of the damage award in civil rights cases.

In *Northeast Women's Center*, 889 F.2d at 472, this court also considered its earlier decision in *Cunningham II*, an opinion issued by the Third Circuit on remand from the Supreme Court to consider its prior holding in light of *City of Riverside*. In *Cunningham II*, this court expressly addressed the issue of proportionality, and held that the amount of money damages should not be the sole consideration in a district court's decision to reduce an attor-

---

**4.** The district court speculated that such "disproportionate attorney fee recoveries" might encourage attorneys to spend undue time on relatively small cases. The court was also concerned about a potential conflict of interest which might develop between a client who has recovered a small amount of the damages sought, and an attorney seeking to protect his/her fee award. By reducing the lodestar amount, the district court asserted that it was recognizing the limited success obtained by the plaintiff in this case, as well as reducing the conflict of interest between attorney and client.

**5.** A "rule of proportionality" would establish a standard that would require fee awards to be proportionate to the damage award.

**6.** This case involved civil RICO defendants who were abortion protesters and "had expressed

their opposition [to abortion] in several demonstrations at the Center's location." Id. at 467. We note here that the *Northeast Women's Center* case is distinguishable from this case because it involved civil RICO claims and not civil rights act claims. However, the court in *Northeast Women's Center* based its holding on a civil rights case, *Cunningham II*, and reasoned that under the particular circumstances the civil rights precedent regarding the award of attorneys fees should be applicable.

**7.** Justice Powell filed a concurrence in which he noted that a rule of proportionality under the facts of this case would be unjust. However, he found that the Court went further than necessary in deciding this case. *City of Riverside*, 477 U.S. 561, 581–586, 106 S.Ct. 2686, 2697–2700, 91 L.Ed.2d 466 (1986).

ney's fee award. *See Northeast Women's Center*, 889 F.2d at 471–75.

We re-affirm our previous holdings which state that it is impermissible for a trial judge to make a reduction in the attorney's fee solely on the basis of proportionality to the damage award. To the extent that any statements in the district court's opinion may be construed as being at variance with the case law of this court, they will be disregarded.

### III.

■ Although the district court's reasoning on the proportionality issue is flawed, this does not end our inquiry in this case. We must determine whether the district court's failure to grant larger attorneys fees in this case was harmless error.

The factual context of this case must be understood as it developed after plaintiff had received a favorable $10,000 jury verdict on her claims under 42 U.S.C. § 1983 and § 1985(3), and after plaintiff had lost all of her other claims for damages including her request for equitable relief which would have amounted to an award of $611,000 according to her proposed final pre-trial order. (App. at 99). With the extraordinary difference between plaintiff's claims and her modest verdict, counsel could have done any of the following:

1) Filed a motion for a new trial limited to damages only;

2) Or, alternatively, plaintiff could have asserted that if the court would deny a new trial which was limited to the damages issue, the plaintiff would seek a new trial for the determination of both the liability and the damages issues; or,

3) plaintiff's counsel could have done nothing in terms of seeking a larger damage verdict, and proceeded only on getting fees for counsel and leave the plaintiff with her modest verdict.

Faced with this conundrum, and recognizing that a district court judge might very well, as a matter of law, be permitted to exercise his or her discretion in awarding a new trial on both liability and damages issues, plaintiff's counsel did not file a motion to upset the damage award, did not file a motion for equitable relief for reinstatement, but rested her case on accepting the $10,000 award to plaintiff and proceeding to seek counsel fees.

With this factual matrix, we must go to the teachings of *Hensley. v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley*, the Supreme Court held that "where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee," and that "where a plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Although the *Hensley* opinion set out general guidelines, the court did not define with any specificity the terms "limited success" or "excellent result." Even three years after *Hensley*, the Supreme Court did not write with greater specificity. *See City of Riverside*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Because such terms are unavoidably ambiguous, the Supreme Court left the application of these somewhat elusive terms to the trial courts, which are more familiar with the facts of a particular case. The lower court judges have had an obligation to breathe more specificity into the meaning of these terms. In *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3d Cir.1989), this court indicated that one factor, a low damage award, should not, in itself, be viewed as a "limited success."

In the case at bar, we hold that the district court correctly characterized the plaintiff's success as "limited" because after receiving a minuscule amount of damages, the plaintiff did not seek the equitable relief prayed for in her pretrial order.[8]

---

8. In her pretrial order, plaintiff alleged that she would have a total economic loss of $95,066 assuming reinstatement as of January 1, 1989. Further, she alleged that if her front pay and lost benefits to the age 65 were considered, she would have had a total loss of $611,000.31. (Plaintiff was 38 years old at the time of the incident.) App. at 99.

## IV.

After the jury verdict, the attorneys for the plaintiff pursued only their claim for attorneys fees. The district court noted that

> ... [t]here was a serious conflict of interest between the attorney for the plaintiff and the plaintiff herself. It is inherently a result of the verdict in this case that any attempt by the attorney to get her client an adequate recovery for the damages she claimed would have endangered the very substantial amount that she expected to receive for the hours that she put into this file, because in the new trial there might be a verdict for the defendant.

App. at 281.

There is no compulsory duty on the part of attorneys to file a motion for a new trial because of a low damage award, and to run the risk that the trial judge may grant a new trial on all issues. However, where an attorney requested $611,000 in damages, received a $10,000 award, and refused to even request a new trial limited to the damages issue, we hold that the district court's failure to grant full attorney's fees in this case was not reversible error.

## V.

 The district court decided that the work performed by the trial consultant was not a reasonable expense and disallowed the request for $18,462.50. The court noted that it did "not believe that what she [the trial consultant] was doing was necessary for the prosecution of this case...." (App. at 287). While the district court adequately compensated the individual who served as both trial consultant and paralegal for her services as a paralegal, it refused to "compensat[e] non-lawyers for doing lawyers work" in the form of trial consulting. (App. at 287). Under the facts of this case, we cannot say that the district court's finding was clearly erroneous.

## VI.

Since we will affirm the judgment of the lower court, we will deny the appellant's prayer for attorney's fees for this appeal, and each party will bear their respective costs.