**ORSON, INC. d/b/a The Roxy Screening Rooms, Plaintiff,**

v.

**MIRAMAX FILM, CORP., Defendant.**

No. Civ.A. 93–4145.

United States District Court, E.D. Pennsylvania.

July 21, 1998.

---

Paul R. Rosen, Jeffrey M. Goldstein, Richard J. Perr, Spector Gadon & Rosen, Philadelphia, PA, for plaintiff.

Thomas E. Zemaitis, Barbara T. Sicalides, Donald J. Carney, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is plaintiff's, Orson, Inc. d/b/a/ The Roxy Screening Rooms ("plaintiff" or "Orson"), Petition for Attorneys' Fees and Costs and defendant's, Miramax, Inc. ("defendant" or "Miramax"), response thereto. For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff filed a three count complaint against defendant on August 2, 1993. Plaintiff subsequently filed amended complaints ultimately alleging violations of section 1 of the Sherman Act; the Pennsylvania common law against unreasonable restraint of trade; and sections 203–4, 203–7, and 203–8 of the Pennsylvania Feature Motion Picture Fair Business Practices Law, 73 P.S. § 203–1 *et. seq.* ("the Pennsylvania Act" or "the Act"). During the course of the proceedings, plaintiff filed a motion for injunctive relief to maintain the status quo pending this litigation, which was denied on November 9, 1993. *See* 836 F.Supp. 309 (E.D.Pa.1993). We also denied plaintiff's motion for reconsideration of this denial of injunctive relief. *See* 1994 WL 7708 (1994). Further, this Court granted Miramax's Motion for Summary Judgment as to Counts I and II and granted partial summary judgment as to Count III of plaintiff's Second Amended Complaint. *See* 862 F.Supp. 1378 (1994). Plaintiff appealed the summary judgment ruling to the Third Circuit, which affirmed the grant of summary judgment as to Counts I and II (the Sherman Act and common law against unreasonable restraint of trade claims), but vacated and remanded as to Count III (the Pennsylvania Act claim). *See* 79 F.3d 1358 (3d Cir. 1996). At trial, we granted Miramax's Rule 50(a) Motion for plaintiff's claims that Miramax violated sections 203–4 and 203–8 of the Pennsylvania Act. Thus, the jury deliberated and rendered a verdict only as to Miramax's violation of 203–7, the 42–day provision. The

jury determined that Miramax violated the statutory provision with regard to seventeen (17) Miramax films and awarded plaintiff damages in the amount of $159,780. Miramax subsequently filed a motion for post trial relief, which was denied by the Court on November 3, 1997. *See* 983 F.Supp. 624.

Plaintiff's present petition requests an award of attorneys' fees in the amount of $711,982.50 (this includes a fee amount of $593,319 .00[1] multiplied by a 1.2 enhancement percentage) and costs in the amount of $72,102.57.[2]

## I. Fees

### A. Legal Standard for Awarding Attorneys' Fees

In a petition for attorneys' fees, the petitioner has the burden of showing that the fees and costs requested are reasonable by producing evidence that supports the hours and costs claimed. *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The party requesting fees bears the ?burden of substantiating the hours expended on the litigation and the reasonableness of its requested hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. The opposing party then has the burden of providing a sufficient basis to contest the reasonableness of the fees. Once an objection is made, the court has considerable discretion to adjust the fee award for any reason put forth by the opposing party. *Rode,* 892 F.2d at 1183.

In determining the amount of attorneys' fees to award, the court's first task is to determine the lodestar. The lodestar is a computation of the reasonable hourly rate multiplied by the number of hours reasonably expended by the attorney. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. The lodestar

produces a presumptively reasonable calculation of attorneys' fees. *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996).

The opposing party may object to the lodestar calculation, calling into question either the reasonableness of the hourly rate requested or the reasonable hours expended. In objecting to the reasonable hours expended, the opposing party may request a reduction of the lodestar on the grounds that, *inter alia,* the hours expended on the litigation were excessive, redundant, or unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Further, the court can reduce the number of hours expended on "litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Rode,* 892 F.2d at 1183.

After determining the lodestar, the court can make further adjustments "if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.* (citing *Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933). An adjustment to the lodestar on the basis of partial success should be "taken independently of the other adjustments and should be the first adjustment applied to the lodestar." *Id.*

### B. The Lodestar Calculation

#### 1. Reasonableness of Hourly Rate

Defendant does not raise an objection to the reasonableness of the hourly rates charged by plaintiff's counsel. Therefore, we will accept as reasonable the hourly rates indicated by plaintiff's counsel in plaintiff's Memorandum. *See* (Pl.'s Mem. at pages 27–28).

---

**1.** To arrive at $593,319.00, plaintiff's counsel took voluntary reductions of $205,581.00 to account for time spent litigating unrelated claims and for time spent which may have been excessive. Any further reductions which we take will be taken off of plaintiff's adjusted figure of $593,-319.00.

**2.** Attorneys' fees and costs are authorized by § 203–10 of the Pennsylvania Act. *See* 73 P.S. § 203–10. Defendant argues that plaintiff should not recover attorneys' fees because plaintiff is not a prevailing party. However, we will not address this argument as it is clear from the express language of the statutory provision that plaintiff is a prevailing party within the meaning of the statute. *See Id.*

### 2. Reasonableness of Hours Expended

Defendant challenges the reasonableness of the hours expended on several grounds which will be discussed separately as follows.

#### a. Lack of Specificity in Record Keeping

■ Defendant first attempts to argue that the time entries submitted by plaintiff's counsel lack sufficient specificity to allow this Court to determine the fee amount. ·Our Court of Appeals has held that "specificity should only be required to the extent necessary for the district court 'to determine if the hours claimed are unreasonable for the work performed.' " *Washington,* 89 F.3d at 1037 (quoting *Rode,* 892 F.2d at 1190 (internal citations omitted)). The Third Circuit further explained that

> a fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.' However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'

*Id.* at 1037–38 (quoting *Rode,* 892 F.2d at 1190 (internal citations omitted)).

We find that the time sheets submitted by plaintiff's counsel are sufficiently specific to allow the Court to determine if the hours claimed are reasonable for the work performed. *See* (Pl.'s Mem. at Exhibit A). Thus, we will make no reductions on this basis.

#### b. Excessiveness of Hours Expended

■ Defendant next attacks many of the time entries of plaintiff's counsel as excessive. We agree that some of the entries reflect an excessive amount of time spent on the task indicated, as shown in Appendix A. By way of example, we find excessive the 4.8 hours spent by Neil Korup ("Korup") on 8/2/93 for "[f]inaliz[ing] file serve complaint request for documents and 30(b)(6) deposition notice." This time entry is excessive for these tasks especially in light of the $225 per hour billing rate of Korup. *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983) (discussing effects of billing at a high hourly rate). Thus, this entry was reduced by 2 hours. Appendix A outlines all of the entries we find excessive; these entries result in a reduction of the lodestar calculation in an amount of $13,270.50.[3] *See* Appendix A.

#### c. Hours Expended on Clerical Tasks

■ Defendant further attacks many of the time entries as representing clerical tasks that should not be billed at attorney and/or paralegal rates. The Third Circuit has stated that "[w]e cannot condone 'the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals.' " *Halderman v. Pennhurst State School & Hosp.,* 49 F.3d 939, 942 (3d Cir.1995) (quoting *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983)). Some of the time entries reflect tasks that are clerical in nature. For example, many hours were billed for photocopying. We will take a reduction of the lodestar in the amount of $5,752 to account for these clerical tasks as reflected in Appendix B.[4]

---

3. As indicated *supra* in footnote 1, this reduction is in addition to the reductions voluntarily taken by plaintiff's counsel for excessiveness.

4. The Supreme Court indicated in *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) that attorney's fees could also include the work of "secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product." *Id.* at 285, 109 S.Ct. 2463. However, *Jenkins* did not concern the question of whether fees for clerical work could be awarded, but instead involved the issue of whether fees for paralegals (doing paralegal work and not clerical work) could be awarded. In finding that fees for paralegals could be awarded, the Court indicated, however, that if the work was purely clerical those services should be compensated at the rate the client would be billed for these clerical services, which should be a lower rate. *Id.* at 288–89 and n. 10, 109 S.Ct. 2463.

Plaintiff's counsel has not met the burden here of showing that their clients are separately billed for clerical tasks (instead of this being part of their overhead), especially when such tasks are billed at paralegal or attorney hourly rates, nor has plaintiff's counsel provided the Court with the appropriate billing rate they charge their clients when trained professionals perform clerical tasks (such as photocopying). *See also*

#### d. Hours Expended that Were Unrelated to Successful Claims

██ Defendants have requested sweeping reductions to the hours expended based on the unrelatedness of certain time entries to the ultimately successful litigation. In order for the Court to make these reductions, the time entries must not only indicate time spent on unsuccessful litigation, but must also be " 'distinct in all respects from' claims on which the party did succeed." *Rode*, 892 F.2d at 1183. Plaintiff has vigorously argued that the time entries indicated by defendant were integrally interrelated to the 42–day provision claim on which plaintiff was ultimately successful. Plaintiff has also made voluntary reductions to many of the time entries for time that was "distinct" from the successful litigation.

With the exception of one entry, the Court cannot find that the time entries defendant requests to be reduced are "distinct in all respects from the successful claim." *Id.* Thus, we decline to make the deductions requested by defendant. We will, however, reduce the lodestar by $470 to account for the one time entry which is sufficiently distinct to warrant reduction. *See* Appendix C.

#### C. The Lodestar Amount

These deductions in the hours reasonably expended result in a $19,492.50 deduction from the $593,319.00 [5] requested. Therefore, the lodestar calculation results in an attorney's fees amount of $573,826.50.

#### D. Adjustments to the Lodestar

Once the lodestar is determined, the court has discretion to adjust this amount upward or downward depending on varying factors. *See Rode*, 892 F.2d at 1183.

#### 1. Upward Adjustment

██ Plaintiff argues for a 1.2 enhancement multiplier. Plaintiff requests this upward adjustment based on the fact that they "establish[ed] an important legal principle"

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) (indicating the Court's ruling in *Missouri* is not limitless and then listing ordinarily compensable expenses which did not include clerical tasks).

and because "the benefit of the lawsuit can be felt beyond the relationship between the plaintiff and defendant." (Pl.'s Mem. at 30). Plaintiff argues that the statutory provisions on which plaintiff ultimately prevailed were previously uninterpreted and that the results of their lawsuit changes the relationship between all distributors and exhibitors of motion pictures throughout the Commonwealth.

We will not grant this enhancement multiplier. As the Third Circuit has explained, there are only very limited circumstances in which the Supreme Court has authorized the upward adjustment of the lodestar. *Rode*, 892 F.2d at 1184 (discussing the three situations which warrant upward adjustment as: 1) delay in payment; 2) quality of representation (in rare cases only) and 3) necessity of attracting competent counsel); *see also Gaffney v. City of Allentown*, 1998 WL 32758 (E.D.Pa.) (discussing restricted circumstances under which enhancement is allowable). Plaintiff is not arguing that any of these three situations are applicable. Instead, plaintiff argues for an enhancement multiplier based on the novelty of the issue. However, the Supreme Court has held that the arguments advanced by plaintiff are not grounds for an upward adjustment. The Court in *Blum* indicated that novelty of an issue is not grounds for an upward adjustment because compensation for the novelty is reflected in both the hourly rates charged and the number of hours expended by counsel. *See Blum v. Stenson*, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984); *see also Gaffney*, 1998 WL 32758 at *4 (recognizing that novelty of issue is reflected in lodestar (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986))).

#### 2. Downward Adjustment

██ "The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892

**5.** This was plaintiff's lodestar amount prior to application of the "1.2" enhancement plaintiff is requesting.

F.2d at 1183 (citing *Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933). "This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.* Defendant asks this Court to take an 84% reduction in the lodestar amount. Defendant argues for this reduction based on the fact that the jury awarded plaintiff only 16% of the damages claimed by plaintiff's expert; plaintiff was awarded less than 10% of the damages Orson sought over the course of the case; and plaintiff lost not only the federal and state antitrust claims, but also lost two of three Pennsylvania statutory claims.

While this Court will not reduce the fees in direct proportion to the amount awarded by the jury, we will consider the limited success of plaintiff in granting a downward reduction of the fee award. *See Washington,* 89 F.3d at 1043 ("But *Hensley* does not stand for the proposition that the court should adjust counsel fees to reflect a certain ratio between the fees and damage awards; rather it stands for the proposition ... that the amount awarded in counsel fees should reflect the extent to which the litigant was successful."). *Hensley* directs us to consider, where as here many of the time entries reflect time spent on interrelated claims, the level of success achieved by plaintiff. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940; *see also Davis v. Southeastern Pennsylvania Transportation Authority,* 735 F.Supp. 158, 162 (inquiring as to whether plaintiff received a good result from the client's point of view in determining downward adjustment to the lodestar).

We find that plaintiff achieved only limited success. As the background section of this Memorandum makes clear, only one portion of one of the counts in plaintiff's complaint ever even made it to trial (the 42–day provision). Further, even on this claim, plaintiff only achieved limited success as the jury only awarded $159,780; whereas, plaintiff's expert testified that plaintiff suffered damages of approximately $1,020,000. *See* (Report Leon J. LaRosa, Jr. pg. 2). Therefore, we will reduce the lodestar amount by 75% to make it reasonable in relation to the success achieved by plaintiff viewed in light of the whole litigation. *See Washington,* 89 F.3d at 1044 (affirming district court's reduction of the lodestar by 50% to account for limited success); *see also Hall v. American Honda Motor Co.,* 1997 WL 732458 (E.D.Pa.) (reducing lodestar by 10% to account for limited success); *Carter–Herman v. City of Philadelphia,* 1997 WL 48942 (E.D.Pa.) (reducing lodestar by 20% to account for limited success); *Schofield v. Trustees of University of Pennsylvania,* 919 F.Supp. 821 (E.D.Pa. 1996) (reducing lodestar by two-thirds to account for limited success); *Taylor v. Chrysler Corp.,* 1995 WL 635195 (E.D.Pa.) (reducing lodestar by $500 to account for limited success); *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 869 F.Supp. 1190 (E.D.Pa.1994) (reducing lodestar by 60% to account for limited success), *adopted in part by* 60 F.3d 816 (3d Cir.1995); *Rainey v. Philadelphia Housing Authority,* 832 F.Supp. 127 (E.D.Pa.1993) (reducing lodestar by 60% to account for limited success); *Davis v. Southeastern Pennsylvania Transportation Authority,* 735 F.Supp. 158 (E.D.Pa.1990), *aff'd,* 924 F.2d 51 (3d Cir. 1991) (reducing lodestar by two-thirds to account for limited success).

Thus, the adjusted lodestar calculation of $573,826.50 will be adjusted downward by 75% which results in an attorney's fee award of $143,456.62.

## II. Costs

Plaintiff initially requested costs in the amount of $72,102.57. Plaintiff has subsequently withdrawn the $430.61 requested for meal expenses. *See* (Pl.'s Suppl.Mem. at 25). Thus, the adjusted request for costs is $71,-671.96. Defendant objects to these costs on the grounds that the copying charges are excessive and that special secretarial services should not be allowed. Defendant further argues that the costs should be reduced in an amount equal to the reduction taken in the lodestar.

Fee applicants should " 'generally be compensated for reasonable expenses such as ... telephone charges, [and] photocopies,' as well as for reasonable costs stemming from computer research." *O'Farrell v. Twin Brothers Meats, Inc.,* 889 F.Supp. 189, 192

(E.D.Pa.1995). However, the fee applicant has the burden of adequately documenting the costs requested. *Hall v. Harleysville Insurance Co.*, 943 F.Supp. 536, 546 (E.D.Pa. 1996).

 We find that the $8,666.76 charged by plaintiff's counsel for "Special Secretarial Services" must be deducted from the costs requested because this entry is not adequately documented. After a thorough review of the billing statements and the original fee petition as well as the supplemental fee petition submitted by plaintiff, we still do not know what is meant by "Special Secretarial Services." Thus, we find that plaintiff has not met the burden of adequately documenting that this was a necessary expense "incurred in order for the attorney to be able to render his or her legal services." *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir.1995); *see also Contractors Association of Eastern Pennsylvania, Inc., v. City of Philadelphia*, 1996 WL 355341 (E.D.Pa.) (costs not awarded if not properly documented).[6] This brings the adjusted figure for costs to $63,005.20.

 Moreover, in order to make the costs awarded reasonable, we will take a 75% reduction of the costs requested to reflect the reduction taken in attorney's fees.[7] *See Hall v. Harleysville Insurance Co.*, 943 F.Supp. 536, 546–47 (E.D.Pa.1996) (reducing costs by a percentage); *In Re Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 886 F.Supp. 445, 485–86 (E.D.Pa.1995) (reducing costs by same percentage reduced lodestar); *see also Kim v. Dial Service International, Inc.*, 1997 WL 458783 (S.D.N.Y.) (reducing costs by same percentage reduced attorney's fees). Therefore, the adjusted costs of $63,005.20 will be reduced by 75%, which leads to a costs figure of $15,751.30.

**6.** Further, plaintiff indicates in the fee petition that the request for costs includes a request for secretarial and other support staff overtime. However, on the itemized bill there is no charge for overtime. Thus, these "Special Secretarial Services" may be for overtime. If they are, they are not compensable. *See OCE Business Systems, Inc. v. Slawter*, 1991 WL 137263 (E.D.Pa.) (secretarial overtime not compensable); *see also*

## III. Conclusion

An appropriate Order follows.

## ORDER

AND NOW, this 21st day of July, 1998, upon consideration of Plaintiff's Petition for Attorney's Fees and Costs, Defendant's response thereto and Plaintiff's Supplemental Response, it is hereby ORDERED, in accordance with the foregoing Memorandum, the Motion is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff is AWARDED Attorneys' Fees in the amount of $143,456.62;

2. Plaintiff is AWARDED costs and expenses in the amount of $15,751.30.

## APPENDIX A
EXCESSIVE TIME ENTRIES

1) *M. Camlin:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 8/3/93 | .9 | $ 81.00 |
| 6/5/96 | 2.0 | $ 180.00 |
| | Subtotal: | $ 261.00 |

2) *N. Korup* *: Billing Rate $225/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 8/2/93 | 2.0 | $ 450.00 |
| 12/8/96 | 1.2 | $ 270.00 |
| 12/16/93 | 4.0 | $ 900.00 |
| 12/17/93 | 8.3 | $ 1,867.50 |
| 1/6/94 | 1.5 | $ 337.50 |
| 1/10/94 | 2.0 | $ 450.00 |
| 1/12/94 | 2.0 | $ 450.00 |
| 1/24/94 | 4.0 | $ 900.00 |
| 1/27/94 | 3.2 | $ 720.00 |
| 2/11/94 | 4.0 | $ 900.00 |
| | Subtotal: | $ 7,245.00 |

3) *K.E. Lescas:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 1/28/97 | .6 | $ 54.00 |
| | Subtotal: | $ 54.00 |

4) *R.J. Perr:* Billing Rate $135/hr

*Ginsberg, D.O. v. Valhalla Anesthesia Associates, P.C.*, 1998 WL 19997 (S.D.N.Y.) (clerical overtime not compensable).

**7.** This overall reduction takes into account defendant's contentions regarding the copying costs and the electronic research costs.

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 9/3/96 | 2.0 | $ 270.00 |
| 9/4/96 | 1.5 | $ 202.50 |
| 9/20/96 | 3.0 | $ 405.00 |
| 9/24/96 | 1.5 | $ 202.50 |
| 10/7/96 | 2.0 | $ 270.00 |
| 10/8/96 | .3 | $ 40.50 |
| 12/6/96 | 2.0 | $ 270.00 |
| 12/9/96 | 2.3 | $ 310.50 |
| 12/10/96 | 6.3 | $ 850.50 |
| 12/12/96 | 5.0 | .$ 675.00 |
| | Subtotal: | $ 3,496.00 |

5) *C.A. Siderio* *: Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 2/13/95 | 2.0 | $ 180.00 |
| 8/2/96 | .2 | $ 18.00 |
| 1/23/97 | 2.0 | $ 180.00 |
| 1/25/97 | 4.5 | $ 405.00 |
| | Subtotal: | $ 783.00 |

6) *J.E. Sperling:* $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 1/24/97 | 4.0 | $ 360.00 |
| 2/3/97 | 5.0 | $ 450.00 |
| 2/10/97 | 4.0 | $ 360.00 |
| | Subtotal: | $ 1,170.00 |

7) *R.T. Tomlinson:* $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 10/15/96 | .7 | $ 63.00 |
| 8/8/96 | 2.0 | $ 180.00 |
| 8/12/96 | .2 | $ 18.00 |
| | Subtotal: | $ 261.00 |
| | **TOTAL:** | $13,270.00 |

* The entries for N. Korup and C.A. Siderio which we have deducted came after the increase in hourly billing rates.

## APPENDIX B

CLERICAL TIME ENTRIES

1) *M. Camlin:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 1/17/94 | 2.0 | $ 180.00 |
| 1/18/94 | .5 | $ 45.00 |
| 1/28/94 | 1.0 | $ 90.00 |
| 5/9/94 | .4 | $ 36.00 |
| 5/18/94 | .4 | $ 36.00 |
| | Subtotal: | $ 387.00 |

2) *R. Colantuono:* Billing Rate $20/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 1/14/94 | 1.8 | $ 36.00 |
| 1/14/94 | 4.7 | $ 94.00 |

| 2/15/94 | 3.1 | $ 62.00 |
|---|---|---|
| 2/16/94 | 3.3 | $ 66.00 |
| 2/28/94 | 1.1 | $ 22.00 |
| 3/10/94 | 1.4 | $ 28.00 |
| 3/21/94 | 3.7 | $ 74.00 |
| 4/26/94 | 1.5 | $ 30.00 |
| 5/2/94 | 3.3 | $ 66.00 |
| 5/16/94 | 3.2 | $ 64.00 |
| 5/17/94 | 1.9 | $ 38.00 |
| | Subtotal: | $ 580.00 |

3) *J.C. Lawson:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 12/17/93 | .4 | $ 36.00 |
| 10/11/96 | .2 | $ 18.00 |
| | Subtotal: | $ 54.00 |

4) *L.B. Newman:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 3/5/97 | 2.0 | $ 180.00 |
| 3/5/97 | 2.0 | $ 180.00 |
| | Subtotal: | $ 360.00 |

5) *M.S. Quain:* Billing Rate $150/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 3/3/94 | 2.8 | $ 420.00 |
| | Subtotal: | $ 420.00 |

6) *C.A. Siderio:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 10/31/96 | 2.0 | $ 180.00 |
| 11/1/96 | 3.0 | $ 270.00 |
| 11/2/96 | 1.0 | $ 90.00 |
| 11/4/96 | 6.5 | $ 585.00 |
| 11/5/96 | 1.0 | $ 90.00 |
| 11/7/96 | 6.0 | $ 540.00 |
| 11/9/96 | 1.0 | $ 90.00 |
| 11/10/96 | 2.0 | $ 180.00 |
| 12/21/96 | 2.0 | $ 180.00 |
| 12/22/96 | 2.0 | $ 180.00 |
| 1/4/97 | 4.0 | $ 360.00 |
| 1/6/97 | 2.0 | $ 180.00 |
| 1/8/97 | 3.0 | $ 270.00 |
| | Subtotal: | $ 3,195.00 |

7) *J.E. Sperling:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 1/29/97 | 5.2 | $ 468.00 |
| 2/24/97 | .4 | $ 36.00 |
| 2/26/97 | .5 | $ 45.00 |
| | Subtotal: | $ 549.00 |

8) *R.T. Tomlinson:* Billing Rate $90/hr

| Date of Entry | Hours Reduced | Cost |
|---|---|---|
| 8/5/96 | .8 | $ 72.00 |
| 9/4/96 | .5 | $ 45.00 |
| 10/11/96 | .4 | $ 36.00 |
| 10/15/96 | .2 | $ 18.00 |
| 10/15/96 | .4 | $ 36.00 |

| | | |
|---|---|---|
| Subtotal: | $ | 207.00 |
| **TOTAL:** | $ | 5,752.00 |

## APPENDIX C

UNRELATED TIME ENTRIES

1) *J.M. Goldstein:* Billing Rate $235/hr

| Date of Entry | Hours Reduced | | Cost |
|---|---|---|---|
| 9/13/96 | 2.0 | $ | 470.00 |
| | **TOTAL:** | $ | 470.00 |