Russell BOLDEN

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Civ. A. No. 88–9156.

United States District Court, E.D. Pennsylvania.

May 5, 1995.

---

H. Francis deLone, Jr., Philadelphia, PA, for plaintiff.

Richard S. Meyer, Michael D. Esposito, Blank, Rome, Comisky & McCauley, Virginia H. Miller, Barbra Shotel, Dilworth, Paxson, Kalish & Kauffman, Nicholas Staffiere, Richard S. Meyer, Philadelphia, for Southeastern Pennsylvania Transportation Authority.

Michael R. Kopac, Sacks, Weston, Smolinsky, Pearson & Albert, Philadelphia, PA, for Transport Workers Union of Philadelphia, Local 234, Transport Workers Union of America/AFL–CIO.

## MEMORANDUM

LUDWIG, District Judge.

A verdict of $250,001 in a second jury trial

having become final,[1] plaintiff Russell Bolden moves for expenses, including attorney's fees of $313,128 and non-taxable costs of $7,037.11. The verdict represented compensatory damages on plaintiff's claim that SEPTA had discharged him in violation of his civil rights. 42 U.S.C. § 1983.

## I.

As the prevailing § 1983 party, plaintiff is statutorily entitled to reasonable attorney's fees and costs. 42 U.S.C. § 1988. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).

Determination of a compensable fee involves the calculation of the "lodestar"—the number of hours appropriately expended times the attorney's reasonable hourly rate—minus a downward adjustment where only partial success has been achieved. *See Hensley v. Eckerhart,* 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983); *Halderman v. Pennhurst State School & Hospital,* 49 F.3d 939, 944 (3d Cir.1995); *Rode,* 892 F.2d at 1183–84; *Schreiber v. Shuler,* no. 94–2567, 1995 WL 116646, *1 (E.D.Pa. March 16, 1995).

Here, SEPTA challenges the hours claimed and the hourly rate, but not plaintiff's overall degree of success.[2] SEPTA concedes attorney's fees and costs to the extent of $157,565.86. Defendant's response at 25.

In 1990, our Circuit summarized the evidentiary burdens in attorney's fees cases:

> The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).... In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affi-

davit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* at 720; *see Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3d Cir.1985) [*vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731].

*Rode,* 892 F.2d at 1183 (citations omitted).

Here, plaintiff met his initial burden with a sufficient itemization of dates, time spent, and work performed.

## II.

■ Whether the requested hourly rate is reasonable "is to be calculated according to the prevailing market rates in the relevant community." *Rode,* 892 F.2d at 1183, citing *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The attorney's experience and skill should be compared to that of other attorneys similarly situated. *Id.,* citing *Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1442 n. 3 (3d Cir.1988). Ninety-five percent of plaintiff's claim is for his primary counsel—H. Francis deLone, Jr., Esquire. Claims are made for four other attorneys, a paralegal and a secretary.

■ For primary counsel's services, the request is for an hourly rate from $175 in 1987 to $225 in 1994. Counsel's affidavit shows an hourly rate of $185 in 1989 and 1990—$205 in 1992—and his current rate of $150–250. Motion for attorney's fees, exh. O ¶¶ 11–12, 14. Additionally, he submitted an affidavit of a Philadelphia attorney given in 1992 with exhibits outlining then prevailing rates of Philadelphia practitioners. *Id.* at

---

1. *See generally Bolden v. SEPTA,* 820 F.Supp. 949 (E.D.Pa.1993), *aff'd* 21 F.3d 29; 953 F.2d 807, *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992); 1989 WL 126239 (E.D.Pa. Oct. 20, 1989); 1989 WL 29237 (E.D.Pa. March 29, 1989). In addition to the verdict, back pay of $6,013.48 was stipulated to.

2. Defendant does dispute plaintiff's success as to specific aspects of this action relating to the first

appeal, 953 F.2d 807, as well as the petition for certiorari to the Supreme Court, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). It does not claim, however, that a percentage reduction in the lodestar is appropriate. Accordingly, these objections will be considered in evaluating the number of hours claimed.

exh. R. These figures, through 1992, are consistent with primary counsel's rates.

In response, defendant proffered no affidavits or other factual evidence, but relied on recent attorney's fees awards in this district that are lower than the fees requested here. None of these cases, however, contains evidence of prevailing rates.[3] *Griffiths v. CIGNA Corp.,* no. 91–2356, 1994 WL 543501, *2 (E.D.Pa. Oct. 6, 1994) (reduction because of insufficient evidence); *Oliver v. Bell Atlantic,* no. 92–751, 1994 WL 315815, *4 (E.D.Pa. June 30, 1994) (same); *1st Westco Corp. v. School District of Phila.,* no. 91–2727, 1994 WL 18632, *3 (E.D.Pa. Jan. 13, 1994) (same); *Patriot Party of Pennsylvania v. Mitchell,* no. 93–2257, 1993 WL 313667, *2 (E.D.Pa. Aug. 16, 1993) (same); *Ruscavage v. Zuratt,* no. 93–991, 1993 WL 276855, *1 (E.D.Pa. July 22, 1993) (same); *Jackson v. Philadelphia Housing Authority,* 858 F.Supp. 464, 475 (E.D.Pa.1994) (reduction because of simple nature of services); *Clark v. Philadelphia Housing Authority,* no. 93–4890, 1994 WL 220022, at *2 (E.D.Pa. May 25, 1994) (same); *Lugo v. Williams,* no. 93–1481, 1994 WL 45100, *3 (E.D.Pa. Feb. 15, 1994) (requested rate of $150 was reasonable for both ministerial and non-ministerial tasks).[4]

Affidavits are required to challenge the factual accuracy of a fee petition. Our Circuit has stated:

> [T]o the extent the challenger seeks to raise a factual issue—for example, a claim that the fee applicant's billing rate was lower than claimed—he or she must introduce affidavits averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted. As *Cunningham I* makes clear, the district court, in counsel fee litigation, can never serve as an "expert witness".... Thus, with respect to factual issues, the court must be presented with evidence and must make findings based on the evidence.

*Bell,* 884 F.2d at 720. *See Cunningham,* 753 F.2d at 268 (error to disregard uncontested affidavits).[5] Accordingly, primary counsel's requested 1992 hourly rate of $205 will be granted through 1992, the most recent year for which prevailing rates were evidenced. As a matter of fairness and because the current rate method will be used to calculate the delay factor, *see infra* part IV, the $205 will be adjusted according to the Consumer Price Index, to a figure of $215 at the end of 1994.[6]

■ Defendant also contests the $250 hourly rate attributed to H. Francis deLone, Sr., Esquire. This practitioner's current hourly rate of $350 as a former senior partner and chairman of a large law firm is not disputed. Defendant contends, however, that his work in this case was at the level of a "mid-level associate" payable at the hourly rate of $135.[7] The total claimed is $12,187.50. The time records submitted show that Mr. deLone, Sr. worked exclusively on the preparation of the brief filed in SEPTA's second appeal. Response at 20–21 (reproducing the records). An accompanying affidavit states that he is highly experienced in appellate work, motion, exh. O. at exh. 6

---

**3.** Defendant's supplemental citation, *Schreiber v. Shuler,* no. 49–2567, 1995 WL 116646 (E.D.Pa. March 16, 1995), is distinguishable because there plaintiff's counsel did not offer evidence of his usual billing rate. *Id.* at *2. Also, there was no information as to counsel's level of experience.

**4.** Defendant contends that primary counsel should receive a reduced rate for time spent on the attorney's fee motion, citing *Griffiths, supra* at *23, an unusual case in that the legal research and analysis had already been done for a previous petition.

**5.** Some district courts have acted as an "expert" in determining prevailing rates. *See, e.g., Shreiber,* 1995 WL 116646 at *1, *citing Norman v. Housing Authority,* 836 F.2d 1292, 1303 (11th Cir.1988). If this view is utilized, $215 per hour, which includes a delay factor for work done as much as seven or more years ago, would appear to be reasonable. *See infra* part IV.

**6.** The Index, U.S. Department of Labor, Bureau of Labor Statistics, shows 3.2 and 2.8 percent cost of living increases for 1993 and 1994 respectively. Adding these percentages to $205 yields $217.48, which has been rounded off to $215. No adjustment will be made for 1995, inasmuch as a billing and payment period of a number of months is not unusual or unreasonable.

**7.** Defendant adduced no evidence that this is the prevailing rate for a mid-level associate or that the work involved should be so categorized.

(citing examples of briefing and argument before the Supreme Court). While the appellate brief was of great importance to plaintiff, Mr. DeLone, Sr.'s current rate will be fixed at $215 per hour [8] in the absence of evidence that the prevailing rate for this type of work was greater than that for primary counsel.

The requested rates for the other three attorneys—$175, $150 and $140 per hour—are in accord with the rates set forth in plaintiff's affidavits and will be granted.[9] The hourly rates of the paralegal and the secretary—$40 and $21—are uncontested.[10]

### III.

■ Next, the "number of hours reasonably expended" must be calculated. *Rode,* 892 F.2d at 1183, citing *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary"—and, if so, must be excluded. *Id.* Defendant objects to hours spent by primary counsel on portions of the first appeal and the petition for rehearing, and plaintiff's unsuccessful petition for certiorari to the Supreme Court.

■ The first appeal and the petition for rehearing involved a total of 219.45 hours. 953 F.2d 807 (3d Cir.1991). Following the first trial, in which plaintiff received a jury award of $285,000, the appellate panel filed three opinions expressing separate views as to liability and damages. 1991 WL 41909, 1991 U.S.App. LEXIS 5078 (3d Cir. April 1, 1991), *vacated* 1991 WL 41909, 24, 1991 U.S.App. LEXIS 7083 (3d Cir. April 23, 1991). Two of the opinions would have set aside the verdict and entered judgment for defendant. On rehearing, *en banc,* a new trial was granted as to damages only. 953 F.2d at 829. Recovery of future lost wages was limited to the period from discharge to a grievance settlement about a year later. Summary judgment for defendant on plaintiff's punitive damages claim was affirmed.

*Id.* Attorney time relating specifically to the unsuccessful claims should not be compensated. *Rode,* 892 F.2d at 1183. Defendant contends that one third of the total of 219.45 hours should be eliminated. The punitive damages claim did not require substantial additional research, analysis, or argument in the context of the entire case. Plaintiff's major problems were, first, to hold the jury verdict and, later, after the panel decision, to obtain a new trial. In light of the amount of the second jury verdict as compared to the first, the limitation on damages did not prove to be of great consequence. Therefore, a reduction of 10 percent, or 22 hours, will be allowed. Additionally, the 20 hours spent on the unsuccessful petition for certiorari will be disallowed. *Toussaint v. McCarthy,* 826 F.2d 901, 904 n. 3 (9th Cir.1987); *Fletcher v. O'Donnell,* 729 F.Supp. 422, 431 (E.D.Pa. 1990).

### IV.

■ The parties agree that the fee award should be adjusted upward to account for the delay in payment from the beginning of this action in 1988 to the present. The reason for such an adjustment of fee awards is to account for delay and thereby analogize a civil rights attorney to a practitioner who is paid before or during the rendering of services. *Gulfstream III Assoc., Inc.,* 995 F.2d 414, 424 (3d Cir.1993), citing *Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Blum v. Witco Chemical Corp.,* 888 F.2d 975, 985 (3d Cir. 1989). Two methods of delay adjustment have been recognized. One adjusts historical rates to reflect present value; the other applies the current rate to the entire course of litigation. *Keenan v. City of Philadelphia,* 983 F.2d 459, 476 (3d Cir.1992); *Blum,* 888 F.2d at 984; *Rode,* 892 F.2d at 1188.

Plaintiff proposes the adjusted historical rates method, specifically to compound the average prime rate plus four percent each year. Motion at 15–16. For each year of

---

**8.** As with primary counsel, this amount includes an upward Consumer Price Index adjustment albeit from 1993 to 1994.

**9.** The aggregate number of hours claimed for these attorneys is 9.05—$1,366.75.

**10.** Thirty-four hours are claimed for the secretary and 6.35 for the paralegal—$968.

services rendered he assesses and cumulates a total "delay factor." For example, 84.4 percent for 1987; 15 percent for 1993. Defendant suggests multiplying the current rate times the total number of hours.

While the historic rate may be a more accurate measure of the economic effect of delay, *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 923 n. 41 (3d Cir.1985), there is no evidence that plaintiff's proposed adjustment reflects his actual cost of deferred payment. *See Gulfstream III,* 995 F.2d at 425 (delay enhancement of prime plus ½ percent where plaintiff showed it borrowed at that rate to pay its attorneys); *Student Public Interest Research Group,* 842 F.2d at 1453 ("Delay compensation does not depend on the type of case or the quality of representation but rather on economic factors encompassing the cost to the plaintiff's law firm of waiting for its fee"); *Blum,* 888 F.2d at 984 (awarding market rate of interest where counsel certified that firm had taken loans during relevant period).

Moreover, plaintiff has not pointed to any alternative interest rates or method of calculating an appropriate delay factor. For this reason, it is difficult to do other than accept or reject his projections in their entirety. Four percent above prime is high, at least impressionistically. Given this record, the current rate method appears preferable.[11] The resulting award, although less than plaintiff's proposed calculation, should substantially make up for "the time gap between the actual expenditure of services and the fee award." *Black Grievance Committee,* 802 F.2d 648, 655–656 (3d Cir.1986), *vacated on other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). It is not practicable or necessarily advisable to adopt a hypothetical interest rate approach. *See Institutionalized Juveniles,* 758 F.2d at 923 ("To hold that the delay in payment multiplier must be equal to the prevailing rate of interest would mean that attorneys who recover fees under § 1988 would be better compensated than the bar as a whole").

As to plaintiff's three attorneys and two other staff persons for whom there is a total uncontested award of $2,334.75, no delay factor will be added. These services appear to have been utilized in the regular course of primary counsel's practice and do not represent a significant amount of expense. The total award is summarized as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| H. Francis deLone, Jr. | 1,023.90 | $215 | $220,138.50 |
| Melissa Lang | 5.45 | 140 | 763.00 |
| Louis Aurely, III | 2.55 | 175 | 446.25 |
| Robert Greenbaum | 1.05 | 150 | 157.50 |
| H. Francis deLone, Sr. | 48.75 | 215 | 10,481.25 |
| Melissa Homestead | 6.35 | 40 | 254.00 |
| Anna Bojko | 21.00 | 34 | 714.00 |
|  |  | Subtotal | $232,954.50 |
|  |  | Costs | 7,037.11 |
|  |  | TOTAL | $239,991.61 |

---

## ORDER

AND NOW, this 5th day of May 1995, plaintiff's motion for attorney's fees is granted in part and denied in part.

| Attorney's fees awarded | $ 232,954.50 |
|---|---|
| Non-taxable expenses | 7,037.11 |

11. In December 1994, $215 per hour—the adjusted prevailing rate for primary counsel—if discounted for inflation, was equal to $181.60 per hour in January 1990 dollars. *See* Consumer Price Index. According to his affidavit, primary counsel's hourly rates in 1989 and 1990 were $185. It is acknowledged that the current rate method does not take into account the effects of inflation. It is intended to redress counsel in a general way for the loss of use of the fee money over an extended time period.