Thomas HALL and Denise
Hall, Plaintiffs,

v.

HARLEYSVILLE INSURANCE
CO., et al., Defendants.

Civil Action No. 94–CV–6656.

United States District Court,
E.D. Pennsylvania.

Oct. 24, 1996.

Cary L. Flitter, Lundy, Flitter & Beldecos, P.C., Narberth, PA, for Plaintiffs.

Thomas K. Ellixson, Marshall, Dennehey, Warner, Coleman & Goggin, Norristown, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Before the Court are Plaintiffs' Petition and Supplemental Petition for Attorney's Fees pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681n and 1681o. For the reasons that follow, we award Plaintiffs $87,-821.48 of the $114,524.23 in fees and costs that they request.

1. We refer to Defendants Harleysville Insurance Company and Harleysville Mutual Insurance

## BACKGROUND

We have previously recited the events that gave rise to this action, *see Hall v. Harleysville Ins. Co.*, 896 F.Supp. 478 (E.D.Pa.1995), so we very briefly summarize them here. Plaintiff Thomas Hall filed a claim for workers' compensation benefits with Defendant Harleysville[1] in 1992. Plaintiffs allege that, as part of its claims investigation, Harleysville requested Plaintiffs' credit reports from the detective agency Loss Prevention Consultants, Inc., (LCPI), paid for these reports upon receipt, and then forwarded them to its attorneys for defense of Mr. Hall's claims. As a result, Plaintiffs instituted this action against Harleysville for willful and negligent noncompliance with the Fair Credit Reporting Act and for an invasion of privacy under Pennsylvania common law. Plaintiffs also named LCPI, its principals, John Ciaccio and Philip A. Olshevski, and its affiliated company, COD Associates, Inc., as Co–Defendants (collectively the "Detective Defendants").

After significant pre-trial motion practice, Plaintiffs reached a confidential settlement with Detective Defendants in January 1996. Plaintiffs' case against Harleysville was called to trial on May 13, 1996, but with the aid of the Court the parties settled that day. Plaintiffs and Harleysville agreed that the financial terms of their settlement would also remain confidential, and that attorney's fees would be determined by this Court. Plaintiffs have submitted petitions claiming total fees and expenses incurred in this litigation in the amount of $114,524.23. We now address Harleysville's numerous objections to this figure.

## DISCUSSION

### I. *PLAINTIFFS' ELIGIBILITY FOR FEES AND COSTS UNDER THE STATUTE*

■ The Fair Credit Reporting Act (FCRA) provides in relevant part that:

Any ... user of information which willfully fails to comply with any requirement im-

Company collectively as "Harleysville."

posed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of ... (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the Court.

15 U.S.C. § 1681n.[2] Harleysville does not dispute that the language "is liable" entitles Plaintiffs as a matter of right to attorney's fees because their action was "successful" within the meaning of the statute.[3] Rather, Harleysville argues that Plaintiffs' petitions for fees and costs should be denied, or in the alternative significantly reduced, because the evidence does not support the award that Plaintiffs request.

## II. REASONABLENESS OF FEES AND COSTS CLAIMED BY PLAINTIFFS

The Third Circuit has clearly articulated the legal principles that govern our disposition of Plaintiffs' petitions. As the party seeking attorney's fees, Plaintiffs have "the burden to prove that [their] request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). Plaintiffs "must 'submit evidence supporting the hours worked and rates claimed'" to meet this burden. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Harleysville then has "the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989)). We have considerable discretion to fix the fee amount in the light of these objections, but may not make reductions on our own. *Bell*, 884 F.2d at 721.

**2.** The attorney's fee and cost provision of 15 U.S.C. § 1681o, governing negligent non-compliance, is identical.

**3.** While we find no cases that specify the elements of a "successful" FCRA action, we agree with Plaintiffs that we should construe this statute in accordance with the civil rights attorney's fee provisions codified at 42 U.S.C. § 1988, which award fees and costs to the "prevailing" party. As Plaintiffs note, it is well-settled that a plaintiff prevails for § 1988 purposes where a monetary award is achieved by settlement. *See*

## A. THE LODESTAR CALCULATION

The parties agree that our analysis begins with the so-called "lodestar" formula. The Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The product of this calculation is the lodestar, and it "is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir.1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

Plaintiffs claim a lodestar in the amount of $96,519.00 for fees incurred through August 6, 1996.[4] Harleysville vigorously contests this figure, however, and argues that Plaintiffs have failed to meet their burden of establishing either element of the lodestar formula.

### 1. Reasonable Rate

In general, the rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community. *Washington*, 89 F.3d at 1035 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)); *see also Student P.I.R.G. v. AT & T Bell Laboratories*, 842 F.2d 1436 (3d Cir.1988) (adopting this rule). As the Court explained in *Blum*,

[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community

*Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); *Baumgartner v. Harrisburg Housing Authority*, 21 F.3d 541, 544 (3d Cir.1994). Given the monetary settlement in this case, Plaintiffs have satisfied the threshold statutory requirement to be eligible for attorney's fees.

**4.** This figure is an aggregate of the June 12 petition and August 6 supplemental petition. It does not include the 8.5 hours Plaintiffs claim for preparing their Reply Brief filed September 5.

for similar services by lawyers of reasonably comparable skill.

*Id.*

Plaintiffs submit that two attorneys, a legal assistant, a law student, and several paralegals billed time to this case. They request hourly rates of $190.00 for Cary Flitter, ("Flitter"), a partner in the Montgomery County, Pa. firm of Lundy, Flitter & Beldecos, P.C., and lead counsel in this case, $100 per hour for Flitter's associate Beth Schulman ("Schulman"), and $50 per hour for the support staff. The only evidence Plaintiffs submit in support of the rates requested for Schulman and the support staff is an affidavit in which Flitter himself attests that, given the qualifications and skill of these individuals, the fees requested represent appropriate and reasonable market rates. In support of Flitter's $190.00 hourly fee, Flitter submits his own affidavit[5] and two opinions of District Courts in this Circuit approving prior Flitter fee petitions. In *Lake v. First Nationwide Bank,* the court approved a fee of $200 per hour for Flitter's services in a RESPA class action suit, though the court qualified its ruling by stating that "while the rates appear on the 'high side' ..., they are not out of line with the market rate in the community for counsel of similar experience and skill." 900 F.Supp. 726, 735 (E.D.Pa.1995) (Robreno, J.). Plaintiffs also direct us to a seven-year old unpublished opinion in *Linan–Faye Construction v. Housing Authority of the City of Camden,* No. 88–CV–5410, slip op. at 4 (D.N.J. June 22, 1989) (Brotman, J.), in which the court approved an hourly fee for Flitter of $125.

Harleysville submits no evidence suggesting that these rates are unreasonable, but argues instead that the Flitter affidavit and opinions in *Lake* and *Linan–Faye* are insufficient evidence to support the fees requested in this case. Harleysville relies on the Third Circuit's decision in *Washington,* 89 F.3d at 1035–37, for its argument that without "evidence in the form of affidavits regarding the reasonable market rates from other attorneys in the area ... the 'Lodestar' cannot be ascertained to the degree of certainty mandated," thus the petition must fail in its entirety. (Def.'s Resp. at 12).

We agree with Plaintiffs, however, that Harleysville misstates the law. The court in *Washington* describes two ways in which courts may determine a reasonable hourly rate. The first, the "community market rate" lodestar test, requires the petitioning party to "demonstrate 'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity.'" *Washington,* 89 F.3d at 1036 (citation omitted). Under this test, the prevailing party meets its burden by submitting "a number of representative affidavits from attorneys in the community who possess comparable qualifications and skill." *Student P.I.R.G.,* 842 F.2d at 1450. Once this burden is met, "and the opposing party does not produce contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." *Id.* (citing *Griffiths v. Cigna Corp.,* Nos. 94–2090 & 94–2091, slip op. at 15–16, 77 F.3d 462 (3d Cir. Jan. 30, 1996) (unpublished)). In the absence of such affidavits, however, the petition does not fail (as Harleysville claims) but, rather, the "district court must exercise discretion in fixing a reasonable hourly rate." *Washington,* 89 F.3d at 1036 (citing *Griffiths,* slip op. at 15–16). So, for example, in *Washington,* the Third Circuit upheld as within the trial court's discretion an award of attorney's fees for the services of two lawyers for whom no additional affidavits had been provided. Harleysville argues that the reason "the Third Circuit found the District Court's discretionary setting of the associate rates appropriate" in *Washington* is that a "benchmark" had already been established by out-

---

**5.** Plaintiffs summarize the relevant attestations in Flitter's affidavit as follows:

(1) That the Plaintiffs' firm has customarily charged $190.00 per hour for similar services of Mr. Flitter ...;

(2) That Flitter is experienced in the (rather specialized) area of consumer credit law and teaches and lectures on point ...;

(3) That $190.00 per hour is a fair and reasonable market rate in this District for a lawyer of similar experience and credentials ...;

(Pls.' Reply Br. at 7) (citations to Flitter's aff. omitted).

side affidavits for the lead counsel's hourly rate. (Def.'s Sur–Reply at 3). Yet nothing in the *Washington* opinion suggests that this was the court's reasoning. In short, we find no authority for the proposition that Plaintiffs' attorney's fee petitions are inadequate as a matter of law. *See, e.g., Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; *Student P.I.R.G.,* 842 F.2d 1436; *O'Farrell v. Twin Brothers Meats, Inc.,* 889 F.Supp. 189 (E.D.Pa.1995); *Rush v. Scott Specialty Gases, Inc.,* 934 F.Supp. 152 (E.D.Pa.1996).

We find it an appropriate exercise of our discretion in this case to award the fees that Plaintiffs request in their petitions. The fees appear reasonable in light of both this Court's experience and the absence of any evidence that suggests otherwise. Further, that Flitter was awarded $200 per hour in a case before our Court just last year (albeit a RESPA action rather than FCRA) is an additional indication that $190 is an appropriate rate for an attorney of his skill and experience. We turn then to the second variable in the lodestar equation.

### 2. Reasonable Number of Hours

Of the 615.2 hours that have been submitted by Plaintiffs, we must exclude those that are "not reasonably expended," i.e. "excessive, redundant, or otherwise unnecessary." *Rode,* 892 F.2d at 1183 (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). We further deduct those hours "exclusively devoted" to litigating claims against other defendants, *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1215 (3d Cir.1978); *see also Rode,* 892 F.2d at 1185 (citations omitted), and any "hours 'spent litigating claims on which the party did not succeed and that were "distinct in all respects from" claims on which the party did succeed.'" *Washington,* 89 F.3d at 1044 (citations omitted). We also "deduct hours when the fee petition inadequately documents the hours claimed." *Id.* (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939). Finally, we view the hours spent in light of the experience and qualifications of the attorney seeking the award. As our Court of Appeals has remarked, "[a] fee applicant cannot demand a high hourly rate— which is based on his or her experience, reputation, and presumed familiarity with the

applicable law—and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983); *Schofield v. Trustees of University of Pennsylvania,* 919 F.Supp. 821, 826 (E.D.Pa.1996).

#### a. Relatedness

Harleysville argues first that we must exclude hours "devoted solely to the investigation, development and resolution of the Plaintiffs' claims against the Detective Defendants." (Def.'s Resp.Br. at 14). It bases its contention on the Third Circuit's pronouncement in *Baughman* that

> fees are to be recovered only from the party against whom liability has been established, and only for the hours reasonable devoted to establishing that liability. We do not believe that a defendant may be required to compensate a plaintiff for attorney hours devoted to the case against other defendants who settle or who are found not to be liable.

583 F.2d at 1214. The court declared that such a rule was necessary to prevent plaintiffs from bringing "frivolous claims in an effort to inflate fees." *Id.*

■■■■■ Our Court of Appeals has made clear that while a "defendant should not 'be required to compensate a plaintiff for attorney hours devoted to the case against other defendants ... who are found not to be liable'.... [,] attorney hours 'fairly devoted' to one defendant that also support the claims against other defendants are compensable." *Rode,* 892 F.2d at 1185 (citations omitted). Thus, hours chargeable to claims against other defendants are chargeable to a particular defendant if "*plaintiff can establish* that such hours also were fairly devoted to the prosecution of the claim against" that particular defendant. *Rode,* 892 F.2d at 1185 (emphasis added); *see also Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Baughman,* 583 F.2d at 1215 (directing district court to exclude only "those hours exclusively devoted to prosecution of case against" other defendants). Thus, Plaintiffs here clearly bear the burden of

proving the number of hours properly chargeable to Harleysville.[6]

■ Plaintiffs have satisfied their burden with respect to some of the time entries challenged by Harleysville. We are persuaded that, given the factual and legal similarity of the claims asserted against both the Detective and the Harleysville Defendants, some of the time expended litigating the claims against one group supported their claims against the other. So, for example, Harleysville argues that we must exclude the entry dated 1/11/95 for services described as "proof, revise and send plaintiff's interrogatories and document requests to defendant's [sic] LPCI, COD, Ciaccio and Olshevski." (Def.'s Resp. at 16–17). Such an entry is properly chargeable to Harleysville, however, because the discovery requests "dealt in considerable measure with their relationship with Harleysville, the carrier's request for these credit reports, Harleysville's past practice with regard to credit reports and the like." (Pls.' Reply at 11). Likewise Harleysville should also have to pay for the time spent on 12/1/94 for "Telephone conference with [LCPI attorney] Scott Sekular RE: facts of case, theories, etc. and amended complaint" and 2/7/95 for "Review Ciaccio crossclaim; review self-executing discovery of McHaffie (.3); telephone conferences with expert; dictate letter to clients with interrogatories of Ciaccio." (Def.'s Resp. at 16–17). This time may also fairly be regarded as supporting Plaintiffs' claims against both groups of Defendants.

■ Plaintiffs have not demonstrated, however, why Harleysville should have to pay for many of the challenged entries. Clearly, hours spent serving the Detective Defendants, correcting the caption, and discussing extensions of pleading and discovery deadlines for the Detective Defendants did not concern Plaintiffs' case against Harleysville. Similarly, Plaintiffs fail to explain how time devoted to reaching settlement with the Detective Defendants in any way supported their claims against Harleysville. Further, while the discovery ultimately produced by the Detective Defendants proved to be quite useful generally, hours expended on the motions required to pry this information loose are not properly chargeable to Harleysville because it bears no responsibility for the conduct that necessitated the motions. Thus, we have excluded those hours attributable to administrative and scheduling matters, the settlement agreement, and motion practice that did not concern Harleysville.

■ While the cross-motions for summary judgment filed by and against Plaintiffs and Detective Defendants present a slightly closer question, we find that these hours should also be excluded. Plaintiffs contend that had the Detective Defendants persuaded this Court that "the credit reports at issue were not statutory 'consumer reports' protected by the FCRA, Plaintiffs entire case, including the allegations against Harleysville would have fallen apart." (Pl.'s Reply at 13). True as this may be, however, Harleysville simply never contested the status of the reports. We agree that, because Harleysville "did not participate, join or become otherwise involved in the litigation of the issues pertaining to" these motions, (Def.'s Sur–Reply at 7), we cannot conclude that this time was "fairly devoted to the prosecution of the claim against" it. *Rode,* 892 F.2d at 1185. Simply put, Plaintiffs have not convinced us that we should impose fees for a motion that Harleysville did not file, concerning an issue that Harleysville did not raise.

■ Lastly, where we simply are not certain whether a particular task is chargeable

---

6. Plaintiffs argue that the relevant legal standard holds that we have discretion only to "reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.'" *Washington,* 89 F.3d at 1044 (citing *Rode,* 892 F.2d at 1183). This is not the standard in this context because Plaintiffs settled their claims against both Harleysville and the Detective Defendants, leaving us with no basis to conclude on which claims Plaintiffs may be regarded to have succeeded. *Cf. In Re Mattera,* 128 B.R. 107 (Bankr. E.D.Pa.1991) (applying its tentative conclusions regarding merits of issues in deciding what attorney's fees were compensable where parties settled). We also disagree with Plaintiffs' assertion that Harleysville bears the burden of proving that the hours claimed for prosecuting the case against the Detective Defendants were not compensable.

to Harleysville or not, we have excluded it, because the burden of proof rests squarely with Plaintiffs. In all, we have deducted 74.7 hours on the grounds that they represent time exclusively devoted to the case against the Detective Defendants. Appendix A contains an itemized list of the exclusions. It should be noted that where a particular entry contains both compensable and excluded hours, we have deducted only a reasonable amount of time for the particular task at issue, and not the entire amount billed for the day (as Harleysville proposes).

### b. Specificity

Harleysville next challenges numerous entries on the grounds that Plaintiffs' billing records are not sufficiently specific. It argues that Plaintiffs' practice of "block billing" (i.e., providing the total hours spent performing a number of tasks on a given day without specifying the time spent on each individual task) prevents us from assessing not just the reasonableness of the time claimed for each task, but also how much time was devoted to tasks actually concerning Harleysville (as opposed to the Detective Defendants). Harleysville therefore suggests that we exclude 50% of the allegedly insufficiently documented hours.

■ . To some extent, this specificity objection implicates the relatedness issues that we have already discussed. Harleysville contends that Plaintiffs have failed to delineate which of the time spent on tasks concerning both groups of defendants is chargeable to Harleysville alone. As we have seen, however, only those hours "exclusively devoted" to prosecuting Plaintiffs' case against Detective Defendants are not properly chargeable to Harleysville. *Baughman,* 583 F.2d at 1215. All of the entries listed in Harleysville's response brief at pages 27 through 40 are therefore chargeable to Harleysville since, by its very admission, these hours were not exclusively devoted to Plaintiffs' case against the Detective Defendants. *See Rode,* 892 F.2d at 1185.

■ As for Harleysville's more general specificity claim, it is well-settled in this Circuit that "specificity should only be required to the extent necessary for the district court

'to determine if the hours claimed are unreasonable for the work performed.'" *Washington,* 89 F.3d at 1037 (citations omitted). Our Court of Appeals has explained that

a fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g. senior partners, junior partners, associates.' However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'

*Id.* at 1037–38 (citing *Rode,* 892 F.2d at 1190). Harleysville asserts that Plaintiffs must "delineate the amount of time involved to each *given task,*" citing *Rode,* 892 F.2d at 1190, for this proposition. (Def.'s Sur–Reply at 9) (emphasis in original). In *Rode,* however, the court explicitly held that "[a]ggregating tasks and hours by day, while not the best method of listing hours expended, does not in this case prevent review by the district court." 892 F.2d at 1191. While this language acknowledges that in some cases fee petitioners should specify the hours allocated to each particular task, they are by no means always required to do so.

We find that the entries objected to by Harleysville are sufficiently specific to allow us "'to determine if the hours claimed are unreasonable for the work performed.'" *Washington,* 89 F.3d at 1037 (citations omitted). While Plaintiffs risk reduction for excessiveness by aggregating hours because we may "assume that more hours were spent on a task than actually were expended," *Rode,* 892 at 1191, we decline to exclude any hours on specificity grounds.

### c. Excessiveness

■ Harleysville argues that several specific examples of allegedly excess billing are evidence of rampant "poor billing judgment" throughout Plaintiffs' fee petition, and that we should therefore reduce the total number of hours claimed by 20%. We agree that the over 30 hours requested for preliminary research and nearly 16 hours claimed for preparation of the fee petition are excessive, and

therefore deduct 10 and 5 hours from these figures, respectively. This is not an adequate basis, however, on which to impose the sweeping—.2 "excessiveness multiplier" that Harleysville proposes.

#### d. State Law Claim

 Harleysville's final objection to the hours that Plaintiffs request concerns the state law claim. Plaintiffs asserted against both groups of defendants a claim under Pennsylvania common law for invasion of privacy for which the law provides no recovery of attorney's fees. Harleysville argues, therefore, that we must exclude the hours devoted to prosecution of this claim, and that since Plaintiffs' fee petitions do not specify which hours these were, we should simply reduce the total number of hours claimed by 20%. Harleysville provides no basis for its apparent estimate that Plaintiffs devoted one-fifth of their time to litigating the state claim.

We are satisfied, however, that the state and federal claims can not be separated for present purposes. We are persuaded that any time spent litigating the state claim also supported the federal claims because "invasion of privacy was 'the actual damages' which the Halls claimed under 15 U.S.C. § 1681n(1)." (Pls.' Reply at 17). We therefore decline to impose the suggested 20% state law claim reduction.

#### 3. The Lodestar

After deducting 89.7 hours for the foregoing reasons, we arrive at a lodestar of $79,-939.50. We now proceed to Harleysville's contentions that this figure should be reduced even further.

### B. ADJUSTMENT TO THE LODESTAR

#### 1. Downward Adjustment

 As we have noted previously, additional factors may warrant adjusting the lodestar figure downward to arrive at the ultimate fee award. *O'Farrell v. Twin Bros. Meats, Inc.*, 889 F.Supp. 189, 192 (E.D.Pa. 1995); *see also Hensley*, 461 U.S. at 434, 103

S.Ct. at 1939–40. The complexity of the legal theories argued, the extent of the litigation, and the use of good faith must all be considered. *Hensley*, 461 U.S. at 434–35, 103 S.Ct. at 1939–40. In addition, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Id.* at 440, 103 S.Ct. at 1943. Harleysville argues that two of these factors—the alleged simplicity of the case and limited success Plaintiffs achieved—militate in favor of reducing the award in this case. We disagree.

 Harleysville argues that the lodestar should be adjusted downward to "reflect the simplicity of the legal theories involved" in this action due to the straightforward nature of the FCRA framework. (D.'s Resp. at 44). We agree with Plaintiffs, however, that while the case was not factually complex, it raised legal issues that were far from well-settled, requiring this Court in one instance to address a split among the Circuits.

 As to the result obtained by Plaintiffs, a downward adjustment of the lodestar is appropriate where "a plaintiff has achieved only partial or limited success." *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941; *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1189 (3d Cir.1995). In light of the confidentiality of the settlement, we avoid an extended discussion of this issue and simply note our conclusion that no downward adjustment of the lodestar is warranted.[7] In so concluding, we reject Harleysville's contention that the relevant point of comparison in this case is an allegedly "non-negotiable" pre-trial demand figure.

#### 2. Delay Multiplier

 Plaintiffs argue that we should grant an upward adjustment of 0.1 (or 10%) to compensate for the 18 months that elapsed between the filing of this suit and resolution at the commencement at trial. Harleysville responds that no such "delay multiplier" should be granted because Plaintiffs' counsel were themselves responsible for much of the delay, and in any event no multiplier is war-

---

7. We also deny Harleysville's request for a 25% reduction of the fee award based on Plaintiffs' alleged breach of the confidentiality of the settlement agreement.

ranted. Regardless of who bears more blame for the relatively minor delays in this case, we agree that an upward adjustment for delay is not appropriate in this case.

While Plaintiffs cite no cases holding that a delay adjustment is explicitly authorized under the FCRA, we continue to interpret this statute in accordance with other federal attorney's fees provisions for which it is well-established that we may make "an appropriate adjustment for delay in payment." *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2468, 105 L.Ed.2d 229 (1989). The reason for such an adjustment is to "analogize [the fee petitioner] to a practitioner who is paid before or during the rendering of services." *Bolden v. SEPTA*, 897 F.Supp. 188, 192 (E.D.Pa.1995) (citations omitted). As our Court has explained, however, a "delay multiplier is not automatically necessary to provide a reasonable compensation." *Peters v. Delaware River Port Authority*, 1993 WL 496675, *2 (E.D.Pa.1993) ("Delay between the rendering of services and the receipt of payment is not uncommon throughout the profession."). Furthermore, the Third Circuit has quite clearly placed the " 'burden on plaintiffs to document the need for a [delay] multiplier.' " *Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir.1992) (citing *Student P.I.R.G.*, 842 F.2d at 1453); *see also Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 923–24 (3d Cir.1985). "This evidence should document the costs of receiving delayed payment of fees." *Keenan*, 983 F.2d at 476.

Plaintiffs have documented no such costs, and have therefore failed to meet their burden. Plaintiffs' statement of need is a bare assertion that "[a]s 18 months have elapsed from filing this suit to resolution at commencement of trial, a modest upward adjustment of 0.1 to the lodestar is requested as reasonable compensation for delay." (Pls.' Br. in Supp. of Pet. at 6). Plaintiffs submit no evidence, for example, of market interest rates or "certification of law firm loans and interest payments paid on those loans while the law firm awaited payment of the fee in the case." *Id.; see also Zampino v. Supermarkets General Corp.*, 1994 WL 470338, *3 (E.D.Pa.1994) ("A mere assertion of need is

insufficient."). Indeed, Plaintiffs' showing is very much like the three sentence statement of need rejected by the Third Circuit as inadequate in *Student P.I.R.G.*, 842 F.2d at 1454. Moreover, even if Plaintiffs had made an adequate showing, the 18 months between filing and resolution does not constitute such a protracted litigation as to warrant a delay enhancement. *See Peters*, 1993 WL 496675 at *2 (refusing to grant delay multiplier where 23 months elapsed between filing of complaint and award of fees). Therefore, no upward adjustment for delay is granted.

### 3. The Lack of Actual Damages

Harleysville raises a new argument in its Sur–Reply Brief that, because actual damages were not "proven or admitted in this matter," no attorney's fees should be awarded. It cites the recently decided Fifth Circuit case of *Johnson v. Eaton*, 80 F.3d 148 (5th Cir.1996), for this proposition. Without engaging in an extended discussion of this argument, we simply note that we agree with Plaintiffs that *Johnson* is neither binding nor persuasive.

### C. COSTS

Plaintiffs' fee petition requests a total of $8971.31 for costs incurred in litigating the instant action. Harleysville argues that these expenses have not been adequately documented, thus we must reduce this figure by the same percentage as we have reduced Plaintiffs's counsel's hours.

We have noted before that fee applicants " 'should generally be compensated for reasonable expenses such as ... telephone charges, [and] photocopies,' as well as for reasonable costs stemming from computer research." *O'Farrell*, 889 F.Supp. at 192 (citations omitted). These costs cannot be awarded, however, unless they are adequately documented. *Rush*, 934 F.Supp. at 157 (E.D.Pa.1996). We agree that Plaintiffs have not documented their costs in such a way as to permit us to determine which expenses were incurred exclusively in the course of litigating the case against the Detective Defendants. We therefore exclude a percent-

age of the costs equal to the percentage of hours we excluded on relatedness grounds. This reduction results in a total costs award of $7881.98.[8]

**CONCLUSION**

For the foregoing reasons we award Plaintiffs $87,821.48 in fees and costs. Plaintiffs are also granted leave to file a supplemental affidavit for the 8.5 hours allegedly required to prepare their Sur–Reply Brief.

## APPENDIX A
## HOURS EXCLUDED AS UNRELATED TO CASE AGAINST HARLEYSVILLE

| DATE | GROUNDS FOR EXCLUSION | TIME DEDUCTED | ATTY |
|---|---|---|---|
| 11/15/94 | service of LPCI | 2.5 | CLF |
| 11/17/94 | amend caption | 0.6 | CLF |
| 11/21/94 | uncertain | 0.1 | CLF |
| 12/05/94 | sched./admin. | 0.1 | CLF |
| 12/19/94 | sched./admin. | 0.3 | CLF |
| 1/10/95 | admin. | 0.8 | CLF |
| 2/23/95 | admin. | 0.2 | CLF |
| 2/27/95 | discovery dispute | 0.3 | CLF |
| 3/01/95 | discovery dispute | 1.0 | CLF |
| 3/06/95 | LCPI discovery requests | 1.4 | CLF |
| 3/08/95 | sched./admin. | 0.4 | CLF |
| 3/09/95 | sched./admin. | 0.5 | CLF |
| 3/10/95 | admin. | 0.25 | CLF |
| 3/13/95 | sched./admin. | 0.6 | CLF |
| 3/14/95 | disc. dispute | 1.1 | CLF |
| 3/17/95 | LCPI's sum. judg. motion (SJ) | 0.6 | CLF |
| 3/21/95 | sched./disc. dispute/SJ | 1.0 | CLF |
| 3/22/95 | disc. dispute/SJ | 0.6 | CLF |
| 3/23/95 | disc. dispute/SJ/admin. | 2.6 | CLF |
| 3/24/95 | disc. dispute/SJ | 3.9 | CLF |
| 3/27/95 | disc. dispute/sched. | 3.0 | CLF |
| 3/28/95 | disc. dispute | 3.0 | CLF |
| 3/29/95 | disc. dispute | 2.2 | CLF |
| 4/11/95 | disc. dispute | 0.3 | CLF |
| 4/18/95 | disc. dispute | 1.2 | CLF |
| 5/09/95 | SJ | 1.5 | CLF |
| 5/10/95 | SJ | 2.8 | CLF |
| 5/11/95 | SJ | 9.0 | CLF |
| 5/30/95 | SJ | 0.3 | CLF |
| 6/13/95 | SJ | 0.9 | CLF |
| 6/20/95 | SJ | 2.8 | CLF |
| 6/21/95 | SJ | 1.0 | CLF |
| 8/14/95 | SJ | 0.3 | CLF |
| 8/17/95 | SJ | 0.9 | CLF |
| 8/17/95 | SJ | 1.2 | BGS |
| 8/18/95 | SJ | 1.2 | CLF |
| 8/18/95 | SJ | 0.3 | BGS |
| 8/23/95 | SJ | 0.3 | BGS |
| 8/28/95 | SJ | 1.0 | CLF |
| 8/31/95 | SJ | 0.1 | CLF |
| 9/07/95 | settlement | 0.1 | CLF |
| 11/27/95 | sched./admin. | 0.3 | CLF |
| 11/27/95 | sched./admin. | 1.0 | CLF |
| 12/01/95 | settlement/sched. | 1.0 | CLF |
| 12/04/95 | settlement/sched. | 0.4 | CLF |
| 12/05/95 | settlement | 0.1 | CLF |

8. We excluded 74.7 (or 12.14239%) of the 615.2 hours requested by Plaintiffs as time not devoted to the case against Harleysville. We therefore reduce the $8971.31 claimed as costs incurred in this litigation by this same 12.14239% (or $1089.33) to arrive at a total costs award of $7881.98.

| DATE | GROUNDS FOR EXCLUSION | TIME DEDUCTED | ATTY |
|---|---|---|---|
| 12/08/95 | settlement/disc. dispute | 0.4 | CLF |
| 12/13/95 | SJ | 4.0 | CLF |
| 12/13/95 | SJ | 1.3 | BGS |
| 12/14/95 | SJ | 2.9 | CLF |
| 12/18/95 | disc. dispute | 1.95 | BGS |
| 12/19/95 | SJ | 0.1 | CLF |
| 12/20/95 | disc. dispute | 0.6 | BGS |
| 12/22/95 | disc. dispute/settlement | 1.2 | CLF |
| 12/27/95 | settlement | 0.4 | CLF |
| 12/28/95 | disc. dispute | 2.5 | BGS |
| 1/02/96 | settlement | 0.4 | CLF |
| 1/03/96 | settlement | 1.15 | CLF |
| 1/05/96 | settlement | 0.25 | CLF |
| 1/09/96 | disc. dispute | 0.1 | CLF |
| 1/24/96 | settlement | 0.9 | CLF |
| 2/09/96 | settlement | 0.1 | CLF |
| 2/09/96 | settlement | 0.1 | CLF |
| 2/26/96 | settlement | 0.1 | CLF |
| 2/28/96 | settlement | 0.1 | CLF |
| 3/01/96 | settlement | 0.1 | CLF |
| | TOTAL HOURS DEDUCTED | 66.55 | CLF |
| | | 8.15 | BGS |

## APPENDIX B: OTHER DEDUCTIONS

| REASON | DEDUCTION | ATTY |
|---|---|---|
| Excessiveness—Prelim Research | 10 hours | CLF |
| Excessiveness—Fee Petition | 5 hours | CLF |
| Estimation of Unrelated Costs | $1089.33 | |

## APPENDIX C

### FINAL CALCULATION OF AWARD FOR FEES AND COSTS

| | | |
|---|---|---|
| Cary L. Flitter | 336.3 hours at $190.00/hr. | $63,897. |
| Beth G. Schulman | 137.05 hours at 100.00/hr. | $13,705. |
| Law Clerk | 46.75 hours at 50.00/hr | $ 2,337.50 |
| **Lodestar** | | **$79,939.50** |
| Costs | | $ 7,881.98 |
| **Total Award** | | **$87,821.48** |